

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11    THERESA BROOKE,                          Case No. 25-cv-0060-BAS-BLM
12                              Plaintiff,      **ORDER DECLINING**
13          v.                                  **SUPPLEMENTAL JURISDICTION**
14    HOSPITALITY INVESTORS TRUST
      INC.,
15
16                              Defendant.
17

18    **I.      BACKGROUND**

19          Plaintiff Theresa Brooke ("Brooke" or "Plaintiff") filed this action against American

20    Realty Capital Properties LLC ("American Realty"), alleging violations of the Americans

21    with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("Unruh Act").

22    (ECF No. 1.) Soon after, American Realty filed an Answer, stating that it did not own the

23    hotel that was the subject of Plaintiff's Complaint. (ECF No. 5.) That same day, Plaintiff

24    amended her Complaint as a matter of right, filing her First Amended Complaint ("FAC")

25    and naming Hospitality Investors Trust Incorporated as the new defendant. (FAC, ECF No.

26    6.) The clerk issued an amended summons on the next day. (ECF No. 7.)

27          Plaintiff, who uses a wheelchair, alleges that Defendant's hotel "does not have a

28    compliant access aisle at the passenger loading zone adjacent to the hotel lobby," which

- 1 -

deterred her from entering the hotel when she visited it in late October 2024. (FAC ¶¶ 1, 7, 10, 12.) She alleges that Defendant's lack of an access aisle constitutes a violation of the ADA , 42 U.S.C. §§ 12102 *et seq.*, and the Unruh Act, Cal. Civ. Code §§ 51–52. (FAC ¶¶ 16–28.) Plaintiff seeks declaratory and injunctive relief under the ADA and statutory damages under the Unruh Act. (*Id.* ¶¶ 21, 27.) The FAC asserts that this Court has jurisdiction "pursuant to 28 U.S.C. §§ 1331 and 42 U.S.C. § 12188." (*Id.* ¶ 3.)[1]

After Plaintiff filed her initial Complaint, however, this Court issued an Order to Show Cause as to why the Court should exercise supplemental jurisdiction over Plaintiff's Unruh Act claim. (ECF No. 3.) Prior to filing an FAC, Plaintiff timely responded to this Order. (ECF No. 4.) Because the Complaint and FAC are identical, excepting the named defendant, Plaintiff's response to the Court's Order to Show Cause is still relevant, and the Court shall consider it in determining whether to exercise supplemental jurisdiction over the Unruh Act claim.

Before the Court is Plaintiff's response to this Court's Order to Show Cause as to why it should not decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim, given the binding Ninth Circuit cases of *Arroyo v. Rosas*, 19 F.4th 1202 (9th Cir. 2021), and *Vo v. Choi*, 49 F.4th 1167 (9th Cir. 2022). (ECF Nos. 3, 4.) For the following reasons, this Court declines to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim.

---

[1] The Court notes that the FAC's assertion of jurisdiction is incomplete. Section 1331 grants federal courts jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States," known as "federal question jurisdiction." 42 U.S.C. Section 12188, meanwhile, provides for civil enforcement of the ADA. Indeed, the Court has original jurisdiction in the form of federal question jurisdiction over Brooke's ADA claim. However, the FAC does not state the basis for the Court's jurisdiction over Brooke's Unruh Act claim. Because the claim does not arise under federal law, and because the parties are not completely diverse, the Court could only have power to hear this claim by exercising supplemental jurisdiction, which is provided for by 28 U.S.C. § 1367.

## II.   LEGAL STANDARD

A district court may exercise supplemental jurisdiction over "all other claims that are so related to the claims in the action within such original jurisdiction that form part of the same case or controversy under Article III of the U.S. Constitution." 28 U.S.C. § 1367(a). That a court may exercise supplemental jurisdiction, however, "does not mean that the jurisdiction must be exercised in all cases." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997). Supplemental jurisdiction is ultimately "a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties." *Id.* Under the supplemental jurisdiction statute, a district court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* § 1367(c).

Where a district court invokes section 1367(c)(4)'s "exceptional circumstances" provision, it must satisfy a two-part inquiry: (1) the "district court must articulate why the circumstances of the case are exceptional within the meaning of § 1367(c)(4)," *Arroyo*, 19 F.4th at 1210 (citation omitted), and (2) "in determining whether there are compelling reasons for declining jurisdiction . . . the court should consider what 'best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine,'" *id.* (quoting *Int'l Coll. of Surgeons*, 522 U.S. at 172–73). To satisfy this "case-specific" inquiry under Section 1367(c)(4), the court "needs to only identify the exceptional circumstances [and compelling reasons] and confirm that they apply to the *particular case* before it." *Vo*, 49 F.4th at 1173.

### III.   ANALYSIS

#### A.   The ADA and the Unruh Act

The ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Under the ADA, injunctive relief is the only remedy available to a private litigant. *Id.* § 12188(a).

In passing the Unruh Act, however, California "chose a different route" and created "a state law cause of action that relies dispositively on the ADA's substantive rules but that expands the remedies available in a private action." *Arroyo*, 19 F.4th at 1211. Under the Unruh Act, all persons in California, "no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). A violation of the ADA constitutes a violation of Section 51 of the Unruh Act. *Id.* § 51(f). Yet, unlike the ADA, the Unruh Act not only provides for injunctive relief, but also allows for recovery of monetary damages for every offense "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)." *Id.* § 52(a).

In 2012 and 2015, California changed the procedural requirements for filing construction-related accessibility claims under the Unruh Act to address the issue of some attorneys "abusing the Unruh Act by demanding 'quick money settlement[s]' from California business owners 'without seeking and obtaining actual repair or correction of the alleged violations on the site.'" *Arroyo*, 19 F.4th at 1206 (citing Act of Sept. 19, 2012, ch. 383, § 24, 2012 Cal. Stat. 3843, 3871). These changes included regulating the language permissible in demand letters for construction-related accessibility claims, Cal. Civ. Code § 55.31, and mandating that a notice for such claims be served along with the summons and complaint, *id.* § 55.54. Critically, California provided additional procedural safeguards where claims were brought by litigants deemed to be "high-frequency litigants" of construction-related accessibility claims. *See* Cal. Civ. Proc. Code § 425.55. The

- 4 -

25cv0060

legislature included these safeguards "so as to ensure that the claims are warranted." *Id.* § 425.55(b). Under the changes, high-frequency litigants are required to pay an additional $1,000 filing fee "if the complaint alleges a construction-related accessibility claim." Cal. Gov't. Code § 70616.5.

In this Court's Order to Show Cause, the Court ordered Plaintiff to identify whether California state courts would consider her a "high-frequency litigant" under the California legislature's procedural safeguards. (ECF No. 3.) Incredibly, Plaintiff responds that it is "debatable" whether she would be labeled a high-frequency litigant in California courts because she was not the one to file the more than ten construction-related accessibility complaints, but rather her attorney was the one who filed these complaints on her behalf. (ECF No. 4 at 1–2.) She supports this argument with no caselaw and this Court is unpersuaded by the argument—yes, attorneys file complaints on their clients' behalf, but those plaintiffs are indisputably the ones initiating the lawsuits and not the attorneys or even paralegals filing those lawsuits.

Brooke's argument also flies in the face of the actual text of the rules. The California legislature clearly sought to limit the litigants themselves, not just their attorneys, when it created the new pleading and filing requirements. In promulgating these requirements, the California legislature found and declared that "[f]orty-six percent of all complaints were filed by a total of 14 *parties*. Therefore, a very small number of *plaintiffs* have filed a disproportionately large number of the construction-related accessibility claims in the state." Cal. Civ. Proc. Code § 425.559(a)(2) (emphasis added). It makes little sense for the legislature to highlight what it perceives as an issue (a disproportionate number of lawsuits filed by relatively few parties or plaintiffs) and then not have the promulgated rules address the highlighted issue. Therefore, the Court determines that Plaintiff must be a high-frequency litigant under California law.

## B.    Supplemental Jurisdiction

The Court is similarly unpersuaded by Plaintiffs' arguments that the *Gibbs* factors favor the Court retaining jurisdiction over Plaintiff's state-law claim. This case presents

"exceptional circumstances" and "there are compelling reasons," primarily based on comity and fairness, for declining jurisdiction over Plaintiff's Unruh Act claim, which outweigh the other factors. 28 U.S.C. § 1367(c)(4). The Court reaches this conclusion after conducting the "two-part inquiry" laid out in *Arroyo*. 19 F.4th at 1210.

### 1.    Exceptional Circumstances

First, the Court considers whether exceptional circumstances exist in this case. "Exceptional circumstances" under section 1367(c)(4) include "at the very least . . . highly unusual situations that threaten to have a substantial adverse impact on the core *Gibbs* values of 'economy, convenience, fairness, and comity.'" *Arroyo*, 19 F.4th at 1211 (quoting *Int'l Coll. of Surgeons*, 522 U.S. at 172–73).

The Ninth Circuit agreed with the district court's finding in *Arroyo* that the circumstances were exceptional where "the distinctive configuration of California-law rules . . . would be rendered ineffectual if the district court were to exercise supplemental jurisdiction." *Arroyo*, 19 F.4th at 1211. Here, as in *Arroyo*, those same California rules are rendered ineffectual where a plaintiff such as Brooke is permitted to raise these claims in federal court and thus skirt California's rules. Indeed, it appears that Brooke has taken full advantage of this workaround. Since 2015, for example, Plaintiff has filed over 200 cases in this district alone, filing roughly 80 of them within the last year.[2] Therefore, the exceptional circumstances here are the same as they were in *Arroyo*—high-frequency litigants like Brooke are still avoiding California's requirements by bringing their construction-related accessibility claims into federal court. By doing so, she has "thwarted the California Legislature's goal of providing damages relief for ADA violations while limiting the financial burdens that California's businesses may face from damages actions." *Frazier v. Ramirez*, No. 2:24-cv-06294-MRA-MAA, 2024 WL 4406814, at *4 (C.D. Cal. Aug. 27, 2024).

---

[2] This number is derived from a search of PACER conducted on February 21, 2025, for Theresa Brooke as a plaintiff, which produced a list of 255 cases filed since August 24, 2015.

Therefore, this Court "cannot stray from *Arroyo*'s conclusion that the first prong of the § 1367(c)(4) inquiry is met." *Vo*, 49 F.4th at 1171. Accordingly, this Court finds that exceptional circumstances justify the Court's discretion to decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim in this action under 28 U.S.C. § 1367(c)(4).

### 2.    Compelling Reasons

The Court next considers the second prong of the Section 1367(c)(4) inquiry, whether there are "compelling reasons for declining jurisdiction" in this case "consider[ing] what best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine articulated in *Gibbs*." *Arroyo*, 19 F.4th at 1210 (citation omitted).

Here, fairness and comity overwhelmingly weigh in favor of declining supplemental jurisdiction over Plaintiff's Unruh Act claim. In *Vo*, the Ninth Circuit affirmed a district court opinion on similar facts, holding that:

> it would not be "fair" to the defendants if plaintiffs could bypass the "limitations California state law has imposed" on Unruh Act claims by simply bringing them in federal court. Moreover, the [district] court noted that allowing federal courts to be an "escape hatch" for plaintiffs seeking to avoid the heightened requirements would be an "affront to the comity between federal and state courts."

*Vo*, 49 F.4th at 1168–69 (favorably citing the lower court's decision declining to exercise supplemental jurisdiction). In short, the Ninth Circuit has already held that in circumstances such as these the values of fairness and comity weigh heavily in favor of declining supplemental jurisdiction. Brooke's response to this Court's Order to Show Cause wholly fails to distinguish the circumstances of this case from those of *Vo*. (*See generally* ECF No. 4.)

As in *Vo*, this Court has the opportunity to decline supplemental jurisdiction over the Unruh Act claim "well before [] rul[ing] on the merits of the ADA claim," and therefore the values of economy and convenience also weigh in favor of declining jurisdiction. *Vo*, 49 F.4th at 1172. In *Vo*, the Ninth Circuit clarified that "[t]he fatal flaw we identified in the

*Arroyo* district court's order was that it waited until a 'very late stage' of the litigation to decline supplemental jurisdiction." *Id.* at 1171–72. In *Arroyo*, even though "many of the *Gibbs* values *could have* been furthered by refusing supplemental jurisdiction over the Unruh Act claim in that case, . . . doing so at that late point in the litigation would not actually effectuate any of those values" because it would "merely create duplicative work for the state court." *Id.* at 1172 (citation omitted). In *Arroyo*, the district court declined to exercise supplemental jurisdiction over the state-law claim after the case went through summary judgment. Here, as in *Vo*, those concerns are not present because this case is still in its very early stages—the defendant has yet to appear, and therefore declining supplemental jurisdiction now "completely sidesteps the core concern articulated in *Arroyo*." *Id.*

Accordingly, at this early stage of litigation, the *Gibbs* values are best served by declining supplemental jurisdiction over Plaintiff's Unruh Act claim. Both exceptional circumstances and compelling reasons exist for the Court to exercise its discretion to decline supplemental jurisdiction over Plaintiff's Unruh Act claim.

## C.    Preemption

Plaintiff asserts in her Response that "28 C.F.R. 36.103(c) expressly and very clearly preempts Unruh's lesser and unequal rights and procedures." (ECF No. 4 at 3.) This provision of the Code of Federal Regulations reads in its entirety:

> (c) Other laws. This part does not invalidate or limit the remedies, rights, and procedures of any other Federal laws, or State or local laws (including State common law) that provide greater or equal protection for the rights of individuals with disabilities or individuals associated with them.

28 C.F.R. § 36.103(c). The plain text of the regulation states that the law "*does not* invalidate or limit" state laws that "provide greater or equal protection" to individuals with disabilities. *Id.* (emphasis added). But the Unruh Act does not provide "greater or equal protection." It provides additional procedural requirements for certain individuals with disabilities who are filing specific types of cases. This provision says nothing about the

limitations on high-frequency litigants like the requirements California has in place. Per this provision, California's additional Unruh Act claim procedures are not preempted.

**IV.    CONCLUSION**

For the foregoing reasons, the Court declines to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim. The claim is hereby **DISMISSED WITHOUT PREJUDICE** for Plaintiff to assert it in state court. The Court retains jurisdiction over Plaintiff's ADA claim.

**IT IS SO ORDERED.**

**DATED: February 24, 2025**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

25cv0060